UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KHAL ANSHEI TALLYMAWR INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, ET AL.,**<br><br>Defendants. | Civil Action No. 21-2716 (RK) (JTQ) |
| **BAIS BRUCHA INC., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, ET AL.,**<br><br>Defendants. | Civil Action No. 21-3239 (ZNQ) (JTQ)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Magistrate Judges in this District serve many functions. One such function is a discovery gatekeeper, allowing the discovery of relevant, proportional material and walling off that which is not. The instant application requires the Court to determine which bucket the objected to material falls into. Here, the Court finds that the information Defendants seek to prohibit is irrelevant and unduly burdensome. And while the Court declines to quash the subpoenas, it will, in its discretion, enter a protective Order prohibiting Plaintiffs from enforcing their 19 subpoenas.

I. BACKGROUND[1]

The Courts writes solely for the benefit of the Parties and, therefore, limits its discussion to the salient facts.

A. Overview of Plaintiffs' Complaints

These matters arise out of disputes over Defendants'—the Township of Toms River, New Jersey, and Township of Toms River Zoning Board of Adjustment (collectively, "Defendants")—denial of Plaintiffs' applications for zoning permits to construct *shuls*, small synagogues, in the Township of Toms River (the "Township"). Plaintiff Khal Anshei Tallymawr Inc. ("Tallymawr") seeks to demolish a single-family house located at 2527 Whitesville Road, Block 13.02, Lot 37 (the "Tallymawr Property") to build a 4,500-square foot *shul*. ECF No. 72 ¶52 in 21-2716. Plaintiffs Bais Brucha Inc. and Rabbi Mordechai Sekula (collectively, Brucha, and together with Tallymawr, "Plaintiffs") purchased 1191 and 1181 Hickory Street in Toms River, New Jersey, Block 191, Lots 1.01 and 1.02 (the "Brucha Property") (together, the "Properties") and seek to construct a *shul* with a building footprint of 4,680 square feet. ECF No. 61 in 21-3239.

On August 26, 2020, Plaintiffs filed their applications with the Township, seeking to have their *shuls* deemed a permitted conditional use in the Rural Residential Zone ("RR Zone"). ECF No. 72 ¶¶ 77, 80 in 21-2716; ECF No. 61 ¶ 80. On

---

[1] The following facts are taken from Plaintiffs' Amended Complaints, ECF Nos. 72 in 21-2716 and ECF No. 61 in 21-3239, and are assumed true for purposes of this Opinion.

2

September 24, 2020, the Township's zoning officer denied Tallymawr's application, and the denial was upheld by the Zoning Board of Appeals following a meeting on January 14, 2021. *Id*. ¶¶ 84-86. On September 24, 2020, Brucha's application was denied, and the denial stated, "Use not permitted in [Rural Residential Zone]." ECF No. 61 ¶ 88 in 21-3239. Brucha appealed the denial to the Zoning Board of Appeals and the decision was similarly upheld, because houses of worship were not considered a permitted use in the RR Zones. *Id*. ¶¶ 89-90.

Plaintiffs contend the denials were motivated by discrimination. Defendants have a different view. They argue that the denials had nothing to do with discrimination; instead, the denials were based on and consistent with the Township's 2009 ordinance (Ordinance Number 4181-09), which unambiguously stated that (the "2009 Ordinance") *all* "houses of worship were outright forbidden in the RR zone[.]" ECF No. 111 at 2 in 21-2716; ECF No. 122 at 2 in 21-3239.

But the 2009 Ordinance is not the only example of religious animus, according to Plaintiffs. In October 2017, the Township passed Ordinance 4558-17, which imposed a 10-acre requirement on houses of worship to be constructed across the Township. Plaintiffs contend that such a significant lot area requirement was not imposed for nonreligious assembly and institutional uses. ECF No. 111 at 10-11 in 21-2716; ECF No. 122 at 10-11 in 21-3239.

B. **Plaintiffs' Subpoenas & Defendants' Motions to Quash**

The Motions to Quash presently before the Court were filed by Defendants. Defendants object to the 19 subpoenas Plaintiffs issued on November 15, 2023 (and

3

served between November 15, 2023 and November 30, 2023), which seemingly are directed to current and former officials of Defendants (the "Subpoenas"), though it is completely unclear from the Parties' briefing.  Indeed, the briefs fail to explain who these individuals are, what role they served for the Township and/or the respective Board(s), and critically when each served the Township—a shortcoming the Court addresses below. ECF No. 111 at 4-5 in 21-2716; ECF No. 122 at 4-5 in 21-3239.

The 19 individual subpoenas contain 21 document requests for various time periods, some spanning decades.  The 19 individuals, along with the requested time periods, are set forth in the below table, which is followed by the 21 document requests that appear in each Subpoena.

**The 19 subpoenaed individuals with time periods requested:**

| Individual | Time Period |
|---|---|
| Robert Alston | January 1, 2016 to October 1, 2023 |
| Art Blank | January 1, 2016 to October 1, 2023 |
| David Ciccozzi | January 1, 2022-present |
| Jason Crispin | January 1, 2016 to October 1, 2023 |
| Anthony Fontana | January 1, 2017 to October 1, 2023 |
| Kevin Geoghegan | January 1, 2017 to present |
| Maurice Hill | January 1, 2003 to present |
| Laurie Huryk | January 1, 2017 to October 1, 2023 |
| Brian Kubiel | January 1, 2003 to October 1, 2023 |
| Justin D. Lamb | January 1, 2022 to present |

4

| | |
|---|---|
| Matthew Lotano | January 1, 2020 to present |
| Nels Luthman | January 1, 2015 to October 1, 2023 |
| Maria Maruca | January 1, 2004 to present |
| Lynn R. O'Toole | January 1, 2016 to October 1, 2023 |
| Daniel Rodrick | January 1, 2018 to present |
| Terrance Turnbach | January 1, 2018 to October 1, 2023 |
| Richard Tutela | January 1, 2018 to October 1, 2023 |
| George Wittmann | January 1, 2009 to October 1, 2023 |
| Matthew Yezzi | January 1, 2017 to present |

## The 21 Requests

1. All Documents, including emails, related to Rabbi Mordechai Sekula.
2. All Documents including emails, related to Bais Brucha, Inc.
3. All Documents, including emails, related to the Subject Property, including but not limited to Plaintiffs proposed development on the Subject Property.
4. All Documents, including emails, related to the Jewish community, Jewish people and/or the Jewish religion, including the Orthodox Jewish community, persons, practices and/or religion.
5. All Documents, including emails, which include the terms "hasidic," "hassidic," "hasids," "haredi," "Sukkah," "ten-acre," "DOJ," "10 acre," "black hats," "Orthodox," "Jew," "Jews," "Jewish," "the community," "Lakewood," "Chabad," "yeshiva," "worship" "shul," "Rabbi," "Mikveh," "Mikvah," or "synagogue."
6. All Documents, including emails, related to real estate solicitation or canvassing in North Dover, including but not limited to "No Knock" stickers and efforts by the Township to ban real estate solicitation or canvassing in areas of North Dover.
7. All Documents, including emails, containing the phrase "Toms River Strong" or "Rise Up Ocean County."
8. All Documents, including emails, relating to the Toms River Quality of Life Task Force.
9. All Documents, including emails, related to any anti-Semitic incidents in Toms River, including but not limited to anti-Semitic graffiti in parks and playgrounds.

5

10. All Documents, including emails, related to the Religious Land Use and Institutional Persons Act (RLUIPA).
11. All Documents, including emails, related to development or "overdevelopment" in North Dover.
12. All postings or messages authored by you on social media related to the Jewish community, Jewish people and/or the Jewish religion, including the Orthodox Jewish community, persons, practices and/or religion, including but not limited to Orthodox Jews moving to Toms River, Jews from Lakewood, real estate canvassing and solicitation in North Dover and "Toms River Strong."
13. A complete download of your Facebook account in native format. For instructions on how to download, please refer to https://www.facebook.com/help/212802592074644?helpref=faq content. Select every category of information for download, including "Messages", before you create the file.
14. A complete download of your Twitter/X history in native format. For instructions on how to download, please refer to https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data. The instructions begin in the middle of the page under "Where can I find my Twitter data?"
15. A complete download of your Snapchat history in native format. For instructions on how to download, please refer to https://help.snapchat.com/hc/en-us/articles/7012305371156-How-do-I-download-my-data-from-Snapchat-
16. A complete download of your Instagram history in native format. For instructions on how to download, please refer to https://help.instagram.com/181231772500920. The instructions begin in the middle of the page under "[d]ownloading a copy of your data on Instagram."
17. A complete download of your LinkedIn history in native format. For instructions on how to download, please refer to https://www.linkedin.com/help/linkedin/answer/50191/accessing-your-account-data?Jang=en.
18. A complete download of your WhatsApp history in native format. For instructions on how to download, please refer to https://faq.whatsapp.com/1180414079177245/?helpref=search&cms_platform=android&locale=en_US
19. A complete download of your Skype history, including conversations and files, in native format. For instructions on how to download, please refer to https://support.skype.com/en/faq/FA34894/how-do-i-export-my-skype-fi!es-and-chat-history.
20. A complete download of your GroupMe history in native format. For instructions on how to download, please refer to https://support.microsoft.com/en-us/office/how-do-i-export-my-groupme-data-1f6875bf-7871-4ade-8608-4c606cd5f518

21. A complete download of your Google Hangouts history or other Google-related chat history. For instructions on how to download, please refer to https://www.lifewire.com/how-to-download-gmail-chat-logs-via-imap-1171928

## II. LEGAL STANDARD

When a party serves a subpoena under Federal Rule of Civil Procedure 45, the information and documents sought must fall within the scope of proper discovery under Rule 26(b)(1). *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Pursuant to Rule 26,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Rule 26 [clearly] establishes a liberal discovery policy," *S.M. v. Tamaqua Area Sch. Dist.*, 2023 WL 3689607, at *1 (M.D. Pa. May 26, 2023), and "[t]he federal courts have . . . long permitted broad and liberal discovery." *Resser v. J.B. Hunt Transp., Inc.*, 2022 WL 1240859, at *1 (M.D. Pa. Apr. 27, 2022) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)). However, the scope of discovery "is not unlimited . . . and should not serve as a fishing expedition." *Saller v. QVC, Inc.*, 2016 2016 WL 87162870, at *5 (E.D. Pa. June 24, 2016).

To that end, if a subpoena requests information that does not fall within the permissible scope of discovery under Rule 26, the subpoena may be quashed or modified. *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15,

2007). Alternatively, the Court may "consider the motion [to quash] as one for a protective order pursuant to Rule 26," *Staff4Jobs, LLC v. List Logistics, LLC*, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020), since "a protective order serves as another mechanism to challenge a subpoena that seeks irrelevant information." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014).

### III. ANALYSIS

#### A. Procedural Issues

Before the Court provides its substantive decision, it takes a moment to address certain procedural and preliminary issues raised by the briefing. The Court first addresses the Local Civil Rule violation that is obvious from the Parties' filings. The Court then addresses certain threshold issues raised in Plaintiffs' submissions that warrant little comment.

##### i. Violation of the Court's Meet & Confer Requirement

The District of New Jersey has long had a meet-and-confer requirement as part of its Local Civil Rules. And this rule was not written on a blank slate. To the contrary, it was created based on this District's wisdom following years-worth of case management and discovery oversight. It thus was the "experience of the Court . . . [that] show[ed] . . . the vast majority of discovery disputes may be settled if the[] [parties] confer and [attempt to] negotiate a resolution in good faith." LITE, N.J. FEDERAL PRACTICE RULES, *Comment 2 to L. Civ. R. 37.1* at 251 (GANN 2024). The Parties did not faithfully follow this mandate.

8

Local Civil Rule 37.1 is explicit: "Discovery motions must be accompanied by an affidavit or other document . . . certifying that the moving party has conferred with the opposing party in a good faith effort to resolve . . . the issues raised by the motion." This is not simply a box-checking exercise; the Parties are required to engage in robust, meaningful discussions with the intention of resolving the disputed issues "without the intervention of the Court." *Id.* Put differently, it is insufficient for a party to just send an email, make a telephone call, or send a letter to an adversary. *See* LITE, N.J. FEDERAL PRACTICE RULES, *Comment 2 to L. Civ. R. 37.1* at 252 (GANN 2024) (citing cases).

And yet, that is precisely what occurred before the instant motions were filed. On October 13, 2023, Plaintiffs' counsel emailed Defendants' counsel asking if "your clients [are] open to searching/producing [private] emails." ECF No. 111-21 in 21-2716; ECF No. 122-21 in 21-3239. Defense counsel responded later that day, stating that he would ask his client but also needed clarification regarding "who" Plaintiffs were referring to. Plaintiffs' reply made explicit that the subpoenas would be far-reaching: "It's hard to say exactly who . . . but we are looking at the Board members, the individuals on the Quality of Life Taskforce, Township employees, etc." *Id.* Defendants' second request for "some indication of who you need to see emails from" went unanswered; instead, Plaintiffs sent a follow-up email on October 18, asking if Defendants "were open to this." When Defendants said no, Plaintiffs served the Subpoenas, and the instant motions were filed.

The Court concludes that this minimal and superficial exchange of short emails is not enough to meet the Court's meet-and-confer requirements. There appears to be no discussion (let alone one the Court would characterize as substantive) of how the information sought would be relevant and why it was needed. There likewise is no effort to either address the time periods in the subpoenas or winnow down the total number of subpoenas. Nor is there any discussion about the Parties' willingness to try and understand the basis for each of the 21 document requests and whether each truly was necessary. For example, it is completely unclear to the undersigned why information concerning a mikvah (a religious bath) is being sought in a case dealing with the construction of a *shul*. In short, the Parties' *de minimis* exchange fails to meet what this Court's Local Civil Rules require.

While the Court could decline to resolve the instant disputes on this basis, it will not do so. But the Parties are now on notice of what this Court expects going forward should there be future disputes: Measured and meaningful discussions demonstrating the Parties' sincere intent to work through and resolve disputes without judicial intervention.

### B. Plaintiffs' Preliminary Challenges to Defendants' Motions to Quash

Plaintiffs raise two threshold challenges to Defendants' motions. Neither argument is persuasive.[2]

---

[2] The other, similarly flawed and unsupported, reasons that Plaintiffs claim the Subpoenas are proper are: Defendants previously refused to produce the documents requested in the Subpoenas; the Subpoenas are narrowly tailored and seek discoverable information; Defendants suffer no undue burden; and Plaintiff is under

10

### i. Plaintiffs' Argument That The Motions Are Untimely

Plaintiffs contend Defendants' motions should be denied because they are untimely. ECF No. 111 at 4-5 in 21-2716; ECF No. 122 at 4-5 in 21-3239. Plaintiffs' argument, which relies on *inter alia* Fed. R. Civ. P. 45(d)(2)(B), is misplaced.

First, Rule 45(d)(2)(B) is titled "Objections" and specifically addresses the time period in which a "person commanded to produce documents" must object to a subpoena. Plaintiffs' citation is thus inapplicable. The specific portion of Rule 45 addressing motions to quash is Rule 45(d)(3). And that Rule makes clear that a motion to quash be made "timely." *Value Drug Co. v. Takeda Pharms. U.S.A., Inc.*, 2022 WL 17656343, at *2 (E.D. Pa. Dec. 8, 2022). While Rule 45 does not define what "timely" means, *id.*, courts "generally . . . have interpreted [it] to mean within the time set in the subpoena for compliance." *Clendinen-Phipps v. Caribbean Leasing & Eco Transportation, Inc.*, 71 V.I. 369, 373 (V.I. Super. 2019); *West Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, 2010 WL 181088, at *2 (D. Del. Jan. 19, 2010) (citing *Ace Hardware Corp. v. Celebrations Ace Hardware, LLC*, 2009 WL 3242561, at *2 (D. Del. Oct. 9, 2009) (same)).

Defendants' motions easily satisfy the timeliness requirement. The compliance date in the Subpoenas was December 18, 2023. ECF No. 111-2 through -20 in 21-2716; ECF No. 122-2 through -20 in 21-3239. Defendants first sought leave to file the motions to quash on December 5, 2023. ECF No. 107 in 21-2716; ECF No.

---

no obligation to exhaust administrative remedies in advance of serving subpoenas. ECF No. 111 in 21-2716; ECF No. 122 in 21-3239.

119 in 21-3239. After obtaining permission, Defendants filed the pending Motions to Quash three days later, on December 8, 2023. ECF No. 109 in 21-2716; ECF No. 121 in 21-3239. Therefore, the Court concludes that Defendants' motions were timely.[3]

### ii. Plaintiffs' Argument That Defendants Lack Standing To Quash

Plaintiffs' other threshold argument—that Defendants lack standing to challenge the subpoenas—fares no better.

A party moving to quash a subpoena must have standing to bring such a challenge. *See Price v. Cnty. of Salem*, 2024 WL 1006263, at **7-8 (D.N.J. Mar. 8, 2024). "Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014). "However, 'a party has standing to bring a Motion to Quash or modify a subpoena upon a nonparty when the party claims a personal privilege in the production sought.'" *Id.* (quoting *Schmulovich*, 2007 WL 2362598, at *2).

That the Defendants lack a personal connection to the subpoenas is the crux of Plaintiffs' standing argument. But even if Plaintiffs were correct (and they very well may be), the analysis does not end there—a point Plaintiffs' (and Defendants') briefing completely glosses over. In other words, assuming *arguendo* Defendants lack any personal privilege or interest in the subpoenaed information and thus lack

---

[3] And, even if this were not the case, the Court would exercise its discretion to review the motions. *See Value Drug Co*, 2022 WL 17656343, at *2.

12

standing to quash the subpoenas, the Court could *still* provide relief through a protective order under Rule 26(c), thus limiting or disallowing the third-party discovery that is beyond the permissible scope of Rule 26(b)(1). This is an approach courts in this District often take, *see, e.g.*, *Ramos v. Walmart, Inc.*, 2023 WL 2327208, at *3 n.3 (D.N.J. Mar. 2, 2023); *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at **4-5; *EEOC v. United Galaxy*, 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011); *Staff4Jobs, LLC v. List Logistics, LLC*, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020) (finding it "appropriate to consider the motion [to quash] as one for a protective order pursuant to Rule 26, given the relevance concerns it raise[d]"), and it is the path this Court elects to chart here, particularly given Defendants' argument that the information sought "falls outside the scope of permissible discovery." ECF No. 109-2 at 3 in 21-2716; ECF No. 121-1 at 3 in 21-3239.

### C. The Entry of a Protective Order is Appropriate

The Court now addresses whether the entry of a protective order under Rule 26 is warranted. The Court has little trouble concluding that one is. Specifically, the Court finds that the requested information is not relevant to Plaintiffs' claims, and, even if it were, it is obvious from the face of the Subpoenas that culling, reviewing, and producing the non-party material requested would present a burden that could only be described as undue.

#### i. The Information Plaintiffs Subpoenaed Is Not Relevant

A protective order is necessary to shield the Subpoena recipients from Plaintiffs' requests because the information sought is wholly irrelevant.

"In applying Rules 26 and 45, the Court must balance several competing factors in assessing the reasonableness of a subpoena:"

> (1) relevance, (2) the party's need for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation.

*Gould v. O'Neal*, 2019 WL 4686991, at *3 (D.N.J. Sept. 26, 2019). "Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances." *Id.* (quoting *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010)). And it is axiomatic that "courts afford greater protection to non-parties in discovery, and [consequently] nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Conforti v. St. Joseph's Healthcare Sys., Inc.*, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019).

Plaintiffs' non-party subpoenas do not meet this standard. The over 400 pages of emails Plaintiffs filed with the Court—271 of which were filed *just days* before the oral argument previously scheduled for this Motion[4]—do nothing to further Plaintiffs' pleadings and the theories advanced therein. Specifically, the emails detail communications from Township residents raising what appear to be legitimate

---

[4] On July 11, 2024, with oral argument on the Motions to Quash scheduled for July 16, 2024, Plaintiffs filed a Notice of Supplemental Authority, totaling 271 pages, where they claimed that as they reviewed the discovery produced, they became aware of new personal email addresses used by the third parties Plaintiffs are seeking to subpoena. ECF No. 151-1 in 21-2716; ECF No. 161-1 in 21-3239. In response, Defendants explained the undue burden the Township would face in having to gather and review 20 years' worth of personal emails if this were a discovery request. ECF No. 155 at 5 in 21-2716; ECF No. 165 at 5 in 21-3239.

14

concerns about potential code violations and bridging "closer community" relationships. The emails also address affordable housing issues, contain information about training, provide notices of hearings (and the agendas for those hearings), attach professional reports, and contain exchanges of campaign strategy. These documents, in this Court's view, are not probative of Plaintiffs' claims; nor do they provide any suggestion of either animus or anti-Semitism from the subpoena recipients that would warrant compelling the production of the requested information. *See* ECF No. 111-21 to -35 and ECF Nos. 151 and 152 in 21-2716; ECF No. 122-19 to -35; ECF No. 161 in 21-3239. This is but one of the glaring deficiencies in the submissions.[5]

Indeed, further fatal to Plaintiffs' argument is their failure to even identify who the individuals subpoenaed are, what their roles were with the Township and/or its Zoning Board, when they served the Township, how they might have any connection to these litigations, and how, specifically, each of the categories of documents sought by Plaintiffs from these particular non-parties would further support their claims. To be sure, the briefing is completely silent on this score, as Plaintiffs offer no explanation, in their Complaints or in their briefing, of why these individuals are being subpoenaed and what (if anything) the documents requested will show. That the Court has not been provided this basic information weighs further in favor of a protective Order, since it appears that the reasons for the Subpoenas are

---

[5] Though the Court does not find relevant the slew of emails that Plaintiffs rely upon, the Court does not endorse the commingling of personal and public email accounts.

at best attenuated. *See, e.g., Sang Geoul Lee v. Won II Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("First, it is the responsibility of neither the District Court nor this Court to make the parties' arguments for them . . . ."); *United States v. Lavanture*, 74 F. App'x 221, 225 (3d Cir. 2003) (observing that the court "must not 'abandon [its] proper role and assume that of an advocate'") (quoting *United States v. Wilensky*, 757 F.2d 594, 597 (3d Cir. 1985)).

Finally, the Court has serious concerns about Plaintiffs' wholesale requests for complete downloads of social media accounts. This is particularly true since Plaintiffs do not set forth a single argument supporting the relevance of the information to be gleaned from these platforms. And Plaintiffs' statement that they were "left with no choice but to subpoena" this information is not enough, ECF No. 111 at 7 in 21-2716; ECF No. 122 at 7 in 21-3239, especially where, as here, there is no evidence that requests for access to social media accounts are likely to lead to discoverable information.

In sum, the Plaintiffs' arguments here are thin. Under the circumstances, the Court is loath to open a Pandora's box that would provide Plaintiffs with access to decades worth of personal emails from non-parties, where there simply is no indication that information in the emails would further Plaintiffs' cause. This is the exact type of fishing expedition that the Federal Rules not only caution against but in fact prohibit.

### ii. Even if the Information Requested were Relevant, Plaintiffs' Requests are Unduly Burdensome

Even if the documents requested in the Subpoenas were relevant to Plaintiffs' claims (they are not), the Court would nonetheless find the Subpoenas unduly burdensome, given: (a) the number of Subpoenas; (b) the breadth of the Subpoenas' requests; (c) the time periods to be searched; and (d) the sheer volume of information that seemingly would need to be searched for and reviewed. And all of this is to say nothing of the significant time, effort, and costs each of these non-parties might be forced to incur if the Court were to allow the Subpoenas. This is not a result the Court is willing to conclude is warranted.

## IV.   CONCLUSION

It is the Court's duty to prevent efforts to obtain irrelevant and unduly burdensome discovery, which is exactly what is at issue in the instant motions. For that reason and those set forth above, the Court will enter a protective Order, preventing Plaintiffs from obtaining the information sought in the 19 Subpoenas.

The Court trusts that this decision will provide the necessary framework for future discussions should the Parties reach an impasse on a discovery dispute. The Clerk is to terminate ECF No. 109 in 21-2716 and ECF No. 121 in 21-3239.

s/ Justin T. Quinn  
JUSTIN T. QUINN  
United States Magistrate Judge