# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KHAL ANSHEI TALLYMAWR INC.,** | Civil Action No. 21-2716 (RK) (JTQ) |
| Plaintiff, | |
| v. | |
| **TOWNSHIP OF TOMS RIVER, ET AL.,** | |
| Defendants. | |
| **BAIS BRUCHA INC., et al.,** | Civil Action No. 21-3239 (ZNQ) (JTQ) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| **TOWNSHIP OF TOMS RIVER, ET AL.,** | |
| Defendants. | |

Plaintiffs seek to recover a total of $100,276.25 in attorneys' fees for 192.52 hours of attorney time and 32.13 hours of paralegal time incurred in connection with Plaintiffs' motions for sanctions.[1] Here, the Court concludes that the amount Plaintiffs seek to recover exceeds what is reasonable. Therefore, while the Court

---

[1] This amount excludes fees incurred for drafting and filing reply briefs in connection to the motion for sanctions as Plaintiffs were not permitted to file same. ECF No. 177 at 24.

awards Plaintiffs certain fees they reasonably expended and supported, it declines to award the total quantum sought in the motion.

I.  **BACKGROUND**[2]

The two separate actions brought by Plaintiff Khal Anshei Tallymawr Inc. ("*Tallymawr* Plaintiff") and Plaintiffs Bais Brucha Inc. and Rabbi Mordechai Sekula ("*Bais Brucha* Plaintiffs") (collectively, "Plaintiffs") against defendants Township of Toms River, New Jersey, and Township of Toms River Zoning Board of Adjustment (collectively, "Defendants") have been ongoing since 2021 with little forward movement. Case No. 3:21-cv-02716-RK-JTQ; Case No. 3:21-cv-03239-ZNQ-JTQ. On October 10, 2023, Plaintiffs filed a motion to compel Defendants to respond to discovery, produce documents, provide a certification from Defendants' third-party discovery provider, and serve Plaintiffs with a complete set of Defendants' insurance policies. ECF No. 97-18 at 13-17 in 21-2716; ECF No. 109-17 at 13-17 in 21-3239. This motion was granted on May 20, 2024. ECF No. 134 in 21-2716; ECF No. 142 in 21-3239.

On June 4, 2024, the Parties submitted a joint status report wherein Plaintiffs claimed that Defendants failed to comply with the May 20 Order. ECF No. 139 in 21-2716; ECF No. 147 in 21-3239. On this basis, Plaintiffs sought leave to file a motion for sanctions (*id.*), which the Court denied on June 5, 2024. ECF No. 141 in 21-2716; ECF No. 149 in 21-3239. Plaintiffs sought leave to move for sanctions a second time

---

[2] The Court has set forth the background of these matters at length in its previous decision (ECF No. 157) and therefore limits its discussion to the salient facts.

2

(ECF Nos. 164 & 165 in 21-2716; ECF Nos. 174 & 175 in 21-3239), given the lack of progress. The Court granted Plaintiffs' request on November 27, 2024 (ECF No. 168 in 21-2716; ECF No. 178 in 21- 3239).

On December 13, 2024, Plaintiffs filed their motions for sanctions. ECF No. 172 in 21-2716; ECF No. 182 in 21-3239. The motions were granted in part and denied in part. ECF No. 177 in 21-2716; ECF No. 187 in 21-3239. The Court denied Plaintiffs' requests for the entry of default judgment but ordered that Defendants be held in contempt of court for their failure to produce items identified in the May 20 Order (some of which remains outstanding). *Id*. The Court also granted Plaintiffs leave to file the appropriate fee application for fees incurred in connection with their motions for sanctions. *Id*. The instant applications followed.

In their applications, Plaintiffs seek to recover over $100,000 in fees they claim to have incurred in connection with their sanctions motions. *See generally* ECF No. 198-1 in 21-2716; ECF No. 198-1 in 21-3239, Moving Brief ("Mov. Br.").[3] In opposition, Defendants highlight that Plaintiffs' motions contain incomplete billing records and they dispute the reasonableness of Plaintiffs' counsel's hourly rate, as well as the amount of time billed. ECF No. 197 in 21-2716; ECF No. 197, Opposition Brief ("Opp. Br."). Defendants also contend that Plaintiffs' billing records are unreasonable, duplicative, contain improper block billing, and suffer from other industry standards. ECF No. 204 in 21-2716; ECF No. 213 in 21-3239, Supplemental Opposition Brief

---

[3] Plaintiffs note that due to the significant overlap in Civil Action Nos. 21-2716 and 21-3239, Plaintiffs submit a single memorandum in support of the motions for attorneys' fees. Mov. Br. at 8 n.1.

3

("Suppl. Opp. Br."). On July 30, 2025, Plaintiffs filed a reply brief in further support of the reasonableness of their fees. ECF No. 206 in 21-2716; ECF No. 215 in 21-3239, Reply Brief ("Reply Br.").

## II. LEGAL STANDARD

When considering whether a fee request is reasonable, courts calculate a lodestar, which is the "number of hours expended on the litigation multiplied by a reasonable hourly rate." *Baymont Franchise Sys., Inc. v. Bernstein Co., LLC*, 2024 WL 2318934, at *1 (D.N.J. May 22, 2024). The fee application must be specific enough for a court to determine whether the time expended was reasonable for the task performed. *Id.* (citing *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996)). Computer generated time summaries that include the dates of the activities "are sufficiently specific." *Id.* With respect to the hourly rate, a court looks to the "reasonableness of the hourly rate . . . in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." *DNB Food Distributors, LLC v. Ideal Wholesale Grocers*, 2023 WL 11852435, at *1 (D.N.J. Sept. 5, 2023) (alteration in original, internal quotations omitted).

## III. ANALYSIS

For the reasons set forth herein, the Court finds that both Plaintiffs' counsel's hourly rates and the number of hours billed require adjustment.

### A. Reasonable Hourly Rate

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). "To meet its burden the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, the evidence Plaintiffs submit in support of their motion includes five declarations of counsel and six exhibits[4] of time sheets for the hours billed on Plaintiffs' motions. ECF Nos. 198-3 to -13.

"Reasonable hourly rates are typically determined based on the market rate in the attorney's community for lawyers of similar expertise and experience." *Machado v. Law Offices of Jeffrey H. Ward,* 2017 WL 2838458, at *2 (D.N.J. June 30, 2017) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 712 (3d Cir. 2005)). "The starting point in determining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." *Id.* (quoting *Public Int. Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). Courts also consider whether the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Vukovich v. Haifa, Inc.*, 2007 WL 2596547, at *2 (D.N.J. Sept. 5, 2007).

---

[4] The Court notes that the exhibits Plaintiffs initially attached to their motion were incomplete charts, which they contend resulted from "formatting errors [ ] unknown to Plaintiffs until they were identified by Defendants in their Oppositions." ECF No. 198.

5

Plaintiffs submit that the requested blended hourly rate of $500[5] is warranted based on counsel's experience and expertise. Mov. Br. at 7. To support their claim, Plaintiffs detail the credentials, expertise, and experience of the four attorneys who performed work on the sanctions motions. Plaintiffs submit that the most experienced of their counsel, Roman P. Storzer, Esq. ("Storzer") has worked in religious rights litigation for approximately three decades, while the least experienced, Avi Wolaski, Esq. ("Wolaski"), has only worked in the field for two years. All attorneys for Plaintiffs, including Wolaski and Storzer, attest that their normal hourly rates are between $450 and $550. *See* ECF No. 198-3 at 6, 198-7 at 3, 198-9 at 4, 198-11 at 3.

Furthermore, Plaintiffs contend that $500 hourly is consistent with rates charged within the District. Plaintiffs maintain that courts have approved significantly higher rates in other instances. Mov. Br. at 12. Plaintiffs rely on *inter alia Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 2024 WL 4370832, at *10 (D.N.J. Oct. 2, 2024), where the court approved rates of $995 for partners, $710 to $810 for counsel, $440 to $590 for associates, and $170 to $215 for senior paralegals. *Id.*

In opposition, Defendants argue that the blended rate is unreasonable and inappropriate. Defendants point to the large gap in experience among the attorneys, specifically arguing that it is unreasonable for a second-year associate, Wolaski, to charge a similar rate to that of a partner with thirty years of experience, Storzer.

---

[5] The $500 hourly rate consists of the average between the blended hourly rates of $550 for the *Bais Brucha* Plaintiffs and $450 for the *Tallymawr* Plaintiff. Notably, Plaintiffs provide no explanation for why the rates differ between Plaintiffs.

6

Opp. Br. at 22. Defendants posit that the wide range of experience between Plaintiffs' attorneys in this matter does not lend itself to a blended rate. *Id.* at 24. Defendants rely on *Slomovitz v. Enclave at Fairways Homeowners Ass'n, Inc.*, 2019 WL 5587290, at *5 (D.N.J. Oct. 30, 2019), where the court rejected a $400 hourly blended rate, finding the use of such a rate to be improper where two associates possessed significantly less experience than more senior counsel. To the extent that the Court may find a blended rate to be appropriate, Defendants ask that the Court incorporate the paralegal's hourly fee of $125 to reduce the blended rate from $500 per hour to $425. *Id.* at 24-25.

Defendants also argue that the requested fees should be limited given Plaintiffs' limited success. Defendants submit:

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . Again, the most critical factor is the degree of success obtained.
>
> Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

Opp. Br. at 26-27 (quoting *Hensley*, 461 U.S. at 435–36 (1983)). Defendants note that the Court denied Plaintiffs' requests for the entry of default judgment in its March 27, 2025 Decision. Opp. Br. at 28 (citing ECF No. 177 in 21-2716; ECF No. 187 in 21-3239). And because Plaintiffs failed to obtain complete relief, Defendants contend that a full award of fees is unwarranted.

Defendants also claim that the Court's previous comments relating to the quality of certain work product also weigh in favor of a reduced award (if any). Opp. Br. at 30-35. Defendants again point to the March 27, 2025 Order where the Court expressed its displeasure with counsel for: (1) improper or lacking citations; (2) failing to seek leave prior to submitting their reply brief; and (3) and relying on inapposite caselaw. ECF No. 177 in 21-2716 at 7-8; ECF No. 187 in 21-3239 at 7-8, 12.

Turning to the instant application, Defendants assert that Plaintiffs' counsel's habit of citing cases not factually on point continues, as much of the caselaw relied upon by counsel consists of intellectual property and class action cases—fields where attorneys will typically charge higher rates than general commercial litigation. Opp. Br. at 36-37 (citing *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 2024 WL 4370832 (D.N.J. Oct. 2, 2024)).

As a preliminary matter, the Court is unpersuaded by Defendants' arguments that the quality of counsel's work and/or limited success requires a reduction in the hourly rate. Nor do the few, plainly distinguishable cases cited by Defendants change that conclusion. Among other things, these decisions do not involve an analysis under Rule 37; instead, the rulings involve a mandated fee-shifting scheme, which plainly

8

is not at issue here. To that end, Defendants' reliance on these decisions is misplaced. And Defendants have failed to provide any relevant support for their request for a reduced rate. *See Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 2024 WL 4370832 (D.N.J. Oct. 2, 2024) (declining to adjust the lodestar determination on the basis of limited success as the application came following a Rule 37 motion for sanctions).[6]

Nonetheless, the Court finds that the blended rate requires adjustment. Specifically, the Court agrees with Defendants that excluding the paralegal's rate from the blended rate is problematic. Plaintiffs seek to use a blended rate, presumably for ease and efficiency in billing practices, yet they still look to charge a separate rate for the paralegal handling the matter. The logic in such a practice is not apparent to the Court. As such, the Court finds it appropriate to include the paralegal in the blended rate to reduce the overall hourly rate from $500 to $425.[7]

As to the reasonableness of this resulting rate, the Court has little trouble concluding that it is reasonable. In reaching that conclusion, the Court has reviewed the Declarations of Storzer, Wolaski, Meredith Bright ("Bright"), and Sieglinde Rath

---

[6] Defendants also rely on *McKenna v. City of Philadelphia*, 582 F.3d 447, 456 (3d Cir. 2009) for the assertion that a court should look to the quality of filings when determining a fee award is misplaced. *McKenna* is inapplicable to the matter at hand as no sanctions were involved, but rather fees were awarded pursuant to 42 U.S.C. § 1988 after the plaintiff prevailed in the underlying civil rights action.

[7] The Court reached this number by averaging the fees charged by the paralegal and the attorneys. All attorneys certify to charging between $450 and $550. Thus, the Court applied their requested blended pf $500 in performing the requisite calculation. As the paralegal charged $125 the equation looks as follows: ($125+$500+$500+$500+$500)/5 = $425.

9

("Rath"), which detail their qualifications and experience. ECF Nos. 198-3, 198-7, 198-9, 198-11. And though it certainly is atypical for a junior associate such as Wolaski, with only two years of legal experience, to charge a similar rate as an attorney with decades of experience such as Storzer, the blended rate itself is not unreasonable, particularly after the inclusion of the paralegal, given that the blended rate falls below the range that counsel typically charge—$450 and $550 per hour.

The Court further finds the blended rate and individual rates reasonable when looking at rates charged by counsel within the District who have similar qualifications and experience. *See Ocasio v. Cty. of Hudson,* 2025 U.S. Dist. LEXIS 84314, at *18 (D.N.J. May 2, 2025) (approving hourly rates of $735-850 per hour for an attorney with 25 years of civil rights litigation experience and $535-625 per hour for counsel with 16 to 20 years of similar experience).

### B. Reasonableness of Hours Expended

Plaintiffs seek fees accounting for over two hundred hours of work on a single motion with a single accompanying brief. The Court has little trouble concluding that the amount of time spent briefing this issue is not reasonable.

It is axiomatic that once "a court ascertains a reasonable hourly rate, it must then determine whether the hours that the attorney expended are reasonable." *Id.* (citing *Hensley*, 461 U.S. at 433–34). Any hours that "were not reasonably expended" are excluded from the fee calculation. *Hensley*, 461 U.S. at 434 (citation omitted). "Hours are not reasonably expended if they are excessive, redundant, or otherwise

unnecessary." *Rode*, 892 F.2d at 1183. Courts consider a number of factors in adjusting an award of attorneys' fees, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of alternative employment; (5) the customary fee for similar work; (6) the nature of the fee payment arrangement; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) fee awards in similar cases.

*Vukovich*, 2007 WL 2596547 at *4.

Plaintiffs argue that hours expended by their counsel were reasonable given the factual complexity of the motions for sanctions and the number of extensive discovery disputes between the Parties over the last three years of litigation. Defendants dispute this claim; they contend that a significant number of hours must be struck or reduced based upon duplicative entries, excessive time billed for intraoffice communications, and block billing. Plaintiffs deny engaging in any of the alleged improper billing practices. Defendants have the better of the argument here.

First, the Court has substantive problems with many of counsel's descriptions because they preclude the Court from being able to determine whether the hours are reasonable. That is because counsel relied heavily upon block billing to describe the services that were rendered. The descriptions thus combine many distinct tasks (such as intra-office communications, document review, legal research, and the drafting of documents) into a single entry, without delineating how much time was spent on each.

11

To be sure, "[t]here is no authority in this circuit categorically prohibiting block billing when submitting invoices for an attorneys' fees motion." *MCO & EA LLC v. Silver Globe Inc.*, 2023 U.S. Dist. LEXIS 85268, at *9 (D.N.J. May 15, 2023). However, a fee application "must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990). Put simply, a party "block bills at his own peril." *Id.* (quoting *Estate of Schultz v. Potter,* 2010 WL 883710, at *7 n.14 (W.D. Pa. Mar. 5, 2010); *see also United States v. NCH Corp.,* 2010 U.S. Dist. LEXIS 94486, at *25 (D.N.J. Sep. 10, 2010) ("When there is confusion due to block billing, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion by task billing.")) .

Here, the Court is unable to make a reasonable determination regarding much of counsel's time. Indeed, the block billing, combined with the excessively vague descriptions of the tasks performed, leaves the Court guessing not only how much time counsel may have expended on each particular task, but also what the particular task was. Consequently, the undersigned cannot "determine if the hours claimed are unreasonable." *Id.*

The following billing entries prove this point:

| Attorney | Date | Activity | Time | Description |
|---|---|---|---|---|
| Bright | 11/11/24 | Draft Documents | 4.31 | Phone call with ASW regarding draft letter to court seeking leave to file a motion for sanctions against Defendants; legal research regarding precedent on prejudice to a party for failure to comply with court orders |

12

| Storzer | 11/11/24 | Draft Documents | 4.11 | Review defendants' productions; review record & prepare and draft letter for sanctions to Court; phone conferences w/MAB & AGW re: same |
| Bright | 11/29/24 | Draft Documents | 4.38 | Meeting with RPS and ASW regarding motion for sanctions; research third circuit case law, review defendants communications to the Court and add notes to the motion outline |
| Storzer | 11/29/24 | Draft Documents | 3.46 | Draft motion for sanctions; legal research & file review for same; Zoom meeting w/ASW, MAB re: same |
| Bright | 12/6/24 | Draft Documents | 2.20 | Phone call to SAS regarding gathering prior correspondence to court from Defendants' counsel; continue drafting Motion for Sanctions |
| Bright | 12/8/24 | Draft Documents | 1.51 | Motion for Sanctions |
| Bright | 12/9/24 | Draft Documents | 2.54 | Continue drafting motion for sanctions; calls with ASW, SAS and RPS regarding same |
| Storzer | 12/10/24 | Draft Documents | 1.23 | Draft motion for sanctions; legal research and review of documents for same; call w/MAB, call w/ASW re: same |
| Bright | 12/11/24 | Draft Documents | 1.80 | Continue drafting motion for sanctions; phone call with RPS and ASW regarding same |
| Storzer | 12/11/24 | Draft Documents | 4.72 | Draft motion for sanctions; phone conferences w/MAB, ASW; email correspondence re: same; preparation of exhibits for same |
| Rath | 12/11/24 | Draft Documents | 0.30 | Preparation of motion for sanctions; communications re: same |
| Bright | 12/12/24 | Draft Documents | 4.50 | Draft motion for sanctions; various calls and emails regarding same |
| Storzer | 12/12/24 | Draft Documents | 8.24 | Draft motion for sanctions; phone conferences w/MAB re:same |

| Rath | 12/12/24 | Preparation | 1.80 | Preparation of motion and other pleadings |
| Bright | 12/13/24 | Draft Documents | 3.20 | Draft RPS declaration in support of motion for sanctions; cite check memorandum; phone calls with ASW, SKR, SAS, and RPS regarding the same |
| Storzer | 12/13/24 | Draft Documents | 4.96 | Draft motion for sanctions, declarations, motion, order, legal research, multiple emails and calls re: same |
| Rath | 12/13/24 | Discovery Preparation | 2.03 | Preparation of motion for sanctions; communications re: same |
| Bright | 12/27/24 | Review | 1.70 | Review Defendants opposition to Plaintiffs' Motion for Sanctions, supporting affidavits and exhibits; various emails with RPS, SKR and ASW regarding same |
| Storzer | 12/27/24 | Review | 2.46 | Review defendants' opposition to motion for sanctions; call w/MAB re: same; research re: same |

*See* ECF No. 209.

Plaintiffs' time entries are clearly problematic. By way of just one example, on December 11, 2024, Ms. Storzer spent "4.72" hours "[d]raft[ing] motion for sanctions; [having] phone conferences w/MAB, ASW; email[ing] correspondence re: same; [and] prepar[ing] exhibits for same." But how much time did counsel specifically spend drafting the motion? The Court has no idea. Nor does the Court know how much time counsel spent on emails and phone conferences. This particular deficiency (and others) bleeds through each of these time entries rendering the Court unable to make the relevant inquiry. Consequently, the Court will deduct 59.45 hours valued at $29,725 from the award.

14

Second, the Court also finds that many of Plaintiffs' entries are unreasonably excessive. Plaintiffs' application seeks fees accounting for over two hundred hours of work. It simply is not reasonable for counsel to claim that they spent over a month's worth of billable hours on one partially briefed motion. And it is not something the undersigned is willing to endorse.

The chart below—documenting time spent on one letter—proves this excessive nature of counsel's billing.

| Bright | 11/12/24 | Draft Documents | 0.82 | Draft letter to Court regarding Motion for Sanctions |
| Wolaski | 11/12/24 | Draft Documents | 5.77 | Draft letter for leave to file Sanctions |
| Bright | 11/12/24 | Draft Documents | 2.89 | Draft letter regarding motion for sanctions |
| Storzer | 11/12/24 | Draft Documents | 3.45 | Draft letter to court re: sanctions |
| Paralegal | 11/12/24 | Draft Documents | 3.73 | Drafted letter to Court re: outstanding discovery and sanctions |
| Wolaski | 11/13/24 | Draft Documents | 1.19 | Edit letter for leave to file Sanctions |
| Storzer | 11/13/24 | Draft Documents | 2.72 | Draft letter for sanctions |
| Wolaski | 11/13/24 | Draft Documents | 1.55 | Draft letter for leave to file Sanctions |
| Bright | 11/13/24 | Draft Documents | 1.65 | Draft letter to Court regarding Motion for Sanctions |
| Bright | 11/13/24 | Draft Documents | 0.74 | Finalize letter to Judge Quinn |
| Paralegal | 11/13/24 | Draft Documents | 4.03 | Drafted letter to Court re: outstanding discovery and sanctions |

*See* ECF No. 209.

It thus took counsel nearly 30 hours to draft a ten-page (double-spaced) letter. ECF No. 165. Plaintiffs dedicated four of those pages to the case's procedural history, which has been previewed in many prior filings. *Id.* at 1-4. The next four pages recite Defendants' incomplete discovery obligations and alleged failures to comply with Court Orders. *Id.* at 4-8. Finally, the remaining two pages detail Plaintiffs' request for leave to file the motion for sanctions. *Id.* at 8-10. Throughout the entirety of the letter, Plaintiffs cite to only *two* cases establishing the precedent for such a motion. *Id.* at 9 (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)); *id.* at 10 (citing *Adams v. Trustees of the N.J. Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 875 (3d Cir. 1994) (internal citations omitted)). Therefore, it is clear that Plaintiffs did not spend hours on legal research as to sanctions. There is simply no reason why it should take three attorneys and a paralegal over twenty-eight hours to draft a single letter that at its core is a summary of all discovery disputes between the Parties.

Therefore, the above billed hours are reduced from 28.54 to 14.00 hours. And while the Court believes that counsel did excessively bill for intraoffice communications, much (if not all) of the excessive billing has been rectified through the above exclusions.

Yet, still more needs to be trimmed. Even after accounting for the above exclusions, 150.66 hours of work remain at issue for the one motion. This number on its face is unreasonable. This Court is not alone in its sentiment. Courts have generally found that it is inappropriate to bill over one hundred hours of time for a

single motion for sanctions. *See Celestin v. Martelly*, 2025 U.S. Dist. LEXIS 193695 at *17 (E.D.N.Y. Sep. 30, 2025) (citing *Stonex Grp., Inc. v. Shipman*, 2025 U.S. Dist. LEXIS 79289 at *6 (S.D.N.Y. Apr. 25, 2025)); *see also Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2012 U.S. Dist. LEXIS 48031 at *4 (D. Mont. Apr. 4, 2012) (noting that "100 hours is, perhaps, an excessive length of time to work on a single discovery motion . . ."); *Bratcher v. United States*, 136 Fed. Cl. 786, 797 (2018) (finding that one hundred hours spent on a motion for fees was excessive and reducing the number of hours by fifty percent).

The Court finds this precedent instructive and follows it. The Court thus concludes that seeking reimbursement for 100 hours of work, let alone over 150, on a partially briefed motion for sanctions is unreasonable and requires significant adjustment. As such, the Court will reduce the total number of hours spent on the motion to 70 hours, a number the Court finds to be a fair representation of the time a reasonable attorney would spend on a motion similar to the one underlying the instant application.

In summation, Plaintiffs request fees in the amount of $100,276.25 for 224.65 hours of attorney time and paralegal time incurred in connection with the preparation of the motion for sanctions. Having reduced the requested blended rate from $500 to $425 to account for the paralegal, the Court also reduces the total time spent from 224.65 hours to 70 hours due to the deficient and excessive nature of billable entries provided by counsel. Thus, the Court awards Plaintiffs $29,750 in fees.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is granted in part for the amount of $29,750.00 for 70 hours of work at an hourly rate of $425. Consequently,

**IT IS** on this 15th day of October 2025,

**ORDERED** that Plaintiffs' motion for attorneys' fees [ECF No. 198 in 21-3239; ECF No. 189 in 21-2716] is GRANTED IN PART; and it is further

**ORDERED** that an award of attorneys' fees in the amount of $29,750.00 is granted to Plaintiffs in the above-referenced action and shall be paid by Defendants within thirty (30) days from the entry of this Order; and it is further

 **ORDERED** that the Clerk is directed to terminate ECF No. 198 in 21-3239 and ECF No. 189 in 21-2716.


    <u>s/ Hon. Justin T. Quinn</u>
    Hon. Justin T. Quinn, U.S.M.J.
    United States Magistrate Judge


Terminates ECF No. 198 in 21-3239 and ECF No. 189 in 21-2716.