**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KHAL ANSHEI TALLYMAWR INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, ET AL.,**<br><br>Defendants. | Civil Action No. 21-2716 (RK) (JTQ) |
| **BAIS BRUCHA INC., et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**TOWNSHIP OF TOMS RIVER, ET AL.,**<br><br>Defendants. | Civil Action No. 21-3239 (ZNQ) (JTQ)<br><br>**MEMORANDUM OPINION AND ORDER AND CERTIFICATION OF FACTS PURSUANT TO 28 U.S.C. § 636(e)(6)(B)** |

This decision addresses the supplemental sanctions briefing submitted pursuant to the Court's July 1, 2026 Order (ECF Nos. 244-45 in 21-2716; ECF Nos. 255-56 in 21-3239), as well as the Second Motions to Be Relieved as Counsel filed by Methfessel & Werbel, Esqs., counsel for Defendants Township of Toms River, New Jersey, and Township of Toms River Zoning Board of Adjustment (collectively, "Defendants") (ECF No. 253 in 21-2716; ECF No. 263 in 21-3239). For the reasons set forth below, the Undersigned certifies facts and recommends additional coercive relief

given the history of discovery issues that have plagued this case, and denies without prejudice Defendants' Second Motions to Be Relieved as Counsel.

## I. Background

These related actions have been pending since 2021 and have involved prolonged disputes concerning Defendants' discovery obligations, particularly the collection, production, and preservation of electronically stored information. On March 27, 2025, the Court held Defendants in contempt for failing to comply with its May 20, 2024 discovery Orders and directed Defendants to complete their outstanding discovery obligations. Despite repeated promises, extensions, and additional opportunities to comply, discovery remains incomplete. Plaintiffs thereafter filed renewed sanctions motions seeking, among other relief, the entry of default judgment based on Defendants' continued discovery noncompliance, while defense counsel separately moved to withdraw. Following oral argument on July 1, 2026, the Court denied default judgment and defense counsel's withdrawal motion without prejudice and directed supplemental briefing concerning a prospective coercive monetary sanction.

## II. Further Sanctions for Discovery Noncompliance

The Court first addresses the appropriate consequence for Defendants' continued failure to complete Court-ordered discovery. Although the Court denied without prejudice Plaintiffs' request for the sanction of default judgment on July 1, 2026, it expressly reserved consideration of whether a lesser coercive monetary sanction was warranted and directed the parties to submit supplemental briefing

addressing the issue. (ECF No. 242 in 21-2716; ECF No. 253 in 21-3239). Because the contemplated sanction would operate prospectively to compel compliance with the Court's discovery Orders, the Undersigned proceeds pursuant to 28 U.S.C. § 636(e)(6)(B) by certifying the pertinent facts to the District Court.

**A. Contempt Authority Pursuant to 28 U.S.C. § 636**

Federal magistrate judges possess substantial authority to manage discovery and to impose sanctions for violations of discovery orders. *See, e.g.*, Fed. R. Civ. P. 37(b). The particular relief contemplated here—a prospective daily monetary sanction designed to compel compliance—bears the hallmarks of coercive civil contempt. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–29 (1994). Because these matters proceed before the Undersigned pursuant to 28 U.S.C. § 636(b), the appropriate procedure is set forth in § 636(e)(6)(B)(iii), which directs a magistrate judge to certify the relevant facts to a district judge where the conduct constitutes civil contempt. *See Wallace v. Kmart Corp.*, 687 F.3d 86, 90, 93–94 (3d Cir. 2012). The Third Circuit has explained that "under the statute, the magistrate judge's certification of facts seems designed to serve [the] function of a charging instrument or pleading for a trial to be held before the district judge." *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 903 (3d Cir. 1992).

Pursuant to 28 U.S.C. § 636(e)(6)(B), the Undersigned certifies the following facts demonstrating continued noncompliance and the need for additional coercive relief.

### B. Certification of Facts

The Court has previously set forth the lengthy procedural and discovery history of these related matters and therefore limits its discussion to the salient facts. The two actions have been pending since 2021 and have involved substantial and ongoing disputes concerning Defendants' persistent discovery shortcomings.

On May 20, 2024, the Court entered Orders requiring Defendants to collect and produce electronically stored information responsive to Plaintiffs' discovery requests. (ECF No. 134 in 21-2716; ECF No. 142 in 21-3239). Despite some productions being made, disputes concerning the completeness of those productions continued.

On March 27, 2025, the Court granted in part Plaintiffs' first Motions for Sanctions, held Defendants in contempt for failing to comply with the May 20, 2024 Orders, and directed Defendants to complete their outstanding discovery obligations. (ECF No. 177 in 21-2716; ECF No. 187 in 21-3239). The Court thereafter afforded Defendants multiple additional opportunities to complete their production. On August 27, 2025, Defendants represented that their outstanding document production and privilege log would be completed within sixty days, and the Court accordingly set an October 27, 2025 deadline. (ECF No. 212 in 21-2716; ECF No. 221 in 21-3239). Defendants failed to complete production by that date.

On November 26, 2025, the Court again deferred consideration of further sanctions and gave Defendants "one final chance" to complete their production and privilege log by December 31, 2025. (ECF No. 218 in 21-2716; ECF No. 229 in 21-

3239). When discovery disputes persisted into January 2026, the Court directed the parties to confer regarding the completeness of Defendants' production, certification, and privilege/redaction logs. (ECF No. 219 in 21-2716; ECF No. 230 in 21-3239).

Plaintiffs thereafter sought leave to file renewed sanctions motions, which the Court granted on March 6, 2026. (ECF No. 223 in 21-2716; ECF No. 234 in 21-3239). Plaintiffs then filed their Second Motions for Sanctions on March 27, 2026 (ECF No. 224 in 21-2716; ECF No. 235 in 21-3239). Defense counsel thereafter moved to withdraw from the representation. (ECF No. 237 in 21-2716; ECF No. 248 in 21-3239).

On July 1, 2026, the Court conducted oral argument on Plaintiffs' Second Motions for Sanctions and defense counsel's motions to withdraw. (ECF No. 243 in 21-2716; ECF No. 254 in 21-3239). At that time, discovery remained incomplete notwithstanding the Court's prior Orders, extensions, and sanctions. Stated differently, Defendants' production remained incomplete *two* years after the Court's original Order requiring production. At the hearing, the Court expressed serious concern regarding Defendants' continued discovery deficiencies and advised Defendants that continued noncompliance would ultimately warrant more severe sanctions. (*See* ECF No. 243 in 21–2716; ECF No. 254 in 21-3239 (hereinafter "July 1 Tr."), at 3:22-4:12). Rather than impose the requested sanction of default at that time, the Court contemplated first imposing a coercive daily monetary sanction for a defined period to afford Defendants a final opportunity to comply. (*Id.* at 6:8-25).

This was for multiple reasons. First, because Plaintiffs' request for default was procedurally improper, since Plaintiffs neither had filed a motion to strike Defendants' answers nor even sought the Clerk's entry of default. Because Plaintiffs had cleared neither of these procedural hurdles, default judgment plainly was premature. Second, the Court was hopeful that the imposition of a daily fine would be sufficient to convince the municipality of the seriousness of its habitual and flagrant disregard of this Court's decisions. The Court therefore denied Plaintiffs' request for the sanction of default judgment without prejudice but reserved the question of the imposition of monetary sanctions to coerce compliance.

On July 8, 2026, the Parties submitted their respective positions concerning the appropriate sanction, including the amount of any daily monetary fine. (ECF Nos. 244-45 in 21-2716; ECF Nos. 255-56 in 21-3239). The Court also entered a separate July 1 Order requiring Mayor Daniel Rodrick to provide his Township-issued devices for discovery within two weeks. (ECF No. 241 in 21-2716; ECF No. 252 in 21-3239).

On August 10, 2026, Plaintiffs advised the Court that defense counsel had provided an August 3 update concerning the status of Township-issued devices, including devices that could not be located or searched (ECF No. 251 at 2 in 21-2716; ECF No. 262 at 2 in 21-3239).

Thereafter, defense counsel certified that, since July 1, 2026, Defendants made twenty-five separate ESI productions or reproductions totaling 3,976 documents and participated in several additional meet-and-confers. (ECF No. 255-1 ¶¶ 2-3 in 21-2716; ECF No. 265-1 ¶¶ 2-3 in 21-3239). Those efforts notwithstanding, Defendants'

own submissions confirm that substantial discovery remains outstanding. (ECF No. 255-1 ¶ 8 in 21-2716; ECF No. 265-1 ¶ 8 in 21-3239). Counsel identifies devices associated with seven custodians that remain subject to technical or accessibility issues. (*Id.*) Numerous Township-issued devices cannot be located, and in many instances the Township maintained no records concerning when those devices were issued, returned, or their present location. (*Id.*) Other devices either have been wiped clean or subjected to a factory reset. Still others remain inaccessible because of passwords, encryption, or recovery-key issues. Most troubling, several devices remain unsearched because the Township has simply refused to authorize the forensic work and associated expense necessary to access them. (*Id.*)

Thus, these are not merely technical impediments beyond Defendants' control. Defendants were obligated to preserve relevant ESI and were later ordered to collect and produce it. (*See* ECF No. 235-24 in 21-3239; ECF No. 224-25 in 21-2716; ECF No. 142 in 21-3239; ECF No. 134 in 21-2716). Yet, despite repeated Orders, extensions, prior sanctions, and additional opportunities to comply, discovery remains incomplete and substantial portions of the relevant ESI are now lost, wiped, reset, inaccessible, or unsearched.

**C. Recommendation**

These certified facts leave little doubt that further coercive relief is warranted. Rule 37(b) provides courts with a "veritable arsenal of sanctions" to deter and remedy discovery violations. *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580–82 (3d Cir. 2018). That discretion, however, is not unlimited. Any sanction imposed must be just

and specifically related to the discovery violation at issue. *Id.*; *see also Repco II Inc. v. Elite Lighting*, 2024 U.S. Dist. LEXIS 66008, at *8 (W.D. Pa. Mar. 6, 2024). In determining the appropriate amount of a coercive monetary sanction, courts consider, among other things, the harm resulting from continued noncompliance, the likely effectiveness of the sanction, the sanctioned party's financial resources and the burden imposed, and the willfulness of the noncompliance. *See Exp.-Imp. Bank of the Republic of China v. Gren.*, 2010 U.S. Dist. LEXIS 137310, at *13 (S.D.N.Y. Dec. 29, 2010) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)).

The certified facts readily establish the need for further coercive relief. Defendants were ordered on May 20, 2024 to collect and produce the ESI at issue. They were thereafter held in contempt, afforded repeated extensions—including extensions based on their own representations concerning when production would be completed—and expressly given "one final chance" to comply. To date, discovery remains incomplete. More troubling still, some of the remaining forensic work has not proceeded because the Township has refused to authorize the work and/or expenses necessary to complete it. Another directive to comply, standing alone, would add little to the numerous Orders already entered in these matters.

The parties themselves agree that a prospective daily monetary sanction is an appropriate means of coercing compliance; they seem only to disagree on the amount. Plaintiffs request a sanction beginning at $25,000 per day and escalating to as much as $100,000 per day. (ECF No. 245 in 21-2716; ECF No. 256 in 21-3239). Defendants propose $1,000 per day until compliance is achieved. (ECF No. 244 in 21-2716; ECF

No. 255 in 21-3239). The Undersigned recommends a sanction of $20,000 per day for a period of thirty days. The recommended amount is substantial, but comparable coercive sanctions have been imposed where necessary to compel compliance. *See, e.g.*, *Int'l Bus. Machines Corp. v. United States*, 493 F.2d 112, 114, 120 (2d Cir. 1973) ($150,000 per day); *United States v. Philip Morris USA Inc.*, 287 F. Supp. 2d 5, 15 (D.D.C. 2003) ($25,000 per day); *United States v. City of Yonkers*, 856 F.2d 444, 450, 460 (2d Cir. 1988) (affirming coercive contempt sanction against municipality that began at $100 per day and doubled daily to a maximum of $1 million per day), *rev'd in part on other grounds sub nom. Spallone v. United States*, 493 U.S. 265 (1990).

Continued noncompliance has materially delayed these already lengthy proceedings and prevented the parties and the Court from moving beyond discovery. The Court has previously ordered Defendants to pay $29,750 in attorneys' fees. (ECF No. 225). That monetary sanction, along with repeated extensions and warnings, failed to secure full compliance. Against that history, the Undersigned is not persuaded that a new nominal sanction, as Defendants suggest, would provide a meaningful coercive incentive to obtain compliance, so this matter can get back on track.

The Undersigned is mindful that Defendants are municipal entities and that any monetary sanction ultimately will be borne by the public. That consideration weighs against Plaintiffs' request for an escalating sanction reaching $100,000 per day. But it does not justify a sanction so modest that it would lack meaningful coercive

force. In light of the history of these matters, the Undersigned is not persuaded that $1,000 per day would be sufficient.

The record also establishes that the present noncompliance is not attributable solely to technical obstacles beyond Defendants' control. Rather, Defendants have repeatedly failed to comply with the Court's Orders and, as to several outstanding devices, the Township has declined to authorize necessary forensic work to complete these searches. (ECF No. 255-1 ¶ 8(a)-(c), (g) in 21-2716; ECF No.265-1 ¶ 8(a)-(c), (g) in 21-3239). These matters remain within Defendants' control and strongly support the need for a meaningful coercive sanction.

Accordingly, the Undersigned respectfully recommends a coercive sanction of $20,000 per day, for a period not to exceed thirty days, unless Defendants sooner achieve full compliance or the District Court orders otherwise. Full compliance should require Defendants to complete all remaining searches and productions required by the Court's prior Orders, including undertaking all reasonable forensic efforts necessary to access the remaining Township-issued devices. If Defendants remain noncompliant after thirty days, Plaintiffs may file motions to strike Defendants' Answers under Rule 37(b)(2)(A).

## III. Defense Counsel's Second Motions to Withdraw

The Court turns next to defense counsel's Second Motions to Be Relieved as Counsel. Again, these motions are denied.

Local Civil Rule 102.1 and Rule of Professional Conduct 1.16 set forth the standards for assessing whether an attorney may be relieved from representation.

Local Civil Rule 102.1 provides, "[u]nless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court." In deciding whether to permit withdrawal, courts consider four factors: (1) the reason withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal may cause to the administration of justice; and (4) the degree to which withdrawal may delay the resolution of the case. *United States ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 252-53 (D.N.J. 1997). Even assuming a valid reason exists for withdrawal, withdrawal remains within the Court's discretion. *Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414, 422-23 (D.N.J. 1993) (citing RPC 1.16(c)).

The Court previously denied without prejudice defense counsel's motions to withdraw. In doing so, the Court explained that it could not consider withdrawal while the outstanding discovery and sanctions issues remained unresolved and that those matters needed to be addressed first. (*See* July 1 Tr. at 3:15–4:2). The Court further noted that allowing substitute counsel[1] to enter at that juncture would substantially disrupt the proceedings and cause additional delay given the volume and complexity of the discovery record and the time new counsel would need to become familiar with it. (July 1 Tr. at 35:17–36:11). Defense counsel acknowledged

[1] Notably, neither at the July 1 hearing nor since have Defendants identified substitute counsel to assume the defense in this case. Indeed, in support of the renewed motion to withdraw, defense counsel certified that, "[d]espite numerous inquiries, Defendants have not identified a firm to assume their defense." (ECF No. 253-2 ¶ 8 in 21-2716; ECF No. 263-2 ¶ 8 in 21-3239).

that concern and agreed that, under the circumstances, the Court's ruling was understandable. (*Id.* at 35:17–36:11).

The Court does not discount the circumstances underlying defense counsel's renewed request to withdraw—a point the undersigned made explicit during the July oral argument. Counsel represents that Defendants discharged the firm "approximately four months ago" (ECF No. 253-2 ¶ 2; ECF No. 263-2 ¶ 2), and the firm has received "no assurances . . . that [it] will be paid voluntarily for . . . legal services." (ECF No. 253-2, ¶ 7; ECF No. 263-2 ¶ 7). Counsel further represents that the attorney-client relationship has become "even more dysfunctional and adversarial" and that continued representation has become "unreasonably difficult." (ECF No. 253-2, ¶¶ 4-5; ECF No. 263-2 ¶¶ 4-5).

However, the Court cannot permit withdrawal at this juncture. Litigation has been pending for more than five years and remains mired in discovery disputes notwithstanding repeated Orders, extensions, and prior sanctions. Withdrawal under Local Civil Rule 102.1 remains committed to the Court's discretion, and the Court must also consider the prejudice to the opposing party, the effect on the administration of justice, and the delays withdrawal would cause. Here, those considerations weigh substantially against permitting counsel to withdraw at this time.

Second, RPC 1.16(c) independently supports requiring defense counsel to continue the representation at this juncture. Although RPC 1.16(a)(3) generally requires withdrawal where a lawyer has been discharged, RPC 1.16(c) expressly

provides that "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." Given the posture of these matters, the unresolved discovery issues, the failure to identify substitute counsel, and the substantial disruption and prejudice that withdrawal would cause, the Court concludes that continued representation is warranted notwithstanding Defendants' discharge of counsel.

The Court's conclusion is consistent with its reasoning at the July 1 hearing. At that time, the Court explained that it could not consider withdrawal while the outstanding discovery and sanctions issues remained unresolved and that those matters had to be addressed first. (July 1 Tr. at 3:15–4:2). Although defense counsel has continued making efforts toward compliance (something the Court genuinely appreciates), the same discovery issues remain unresolved. In addition, the Court is now certifying Defendants' continued noncompliance to the District Court and recommending additional coercive measures. Allowing defense counsel to withdraw would undermine the effectiveness of those measures and risk further delay. This is particularly true where, as here, Defendants cannot represent themselves and counsel has not identified a firm retained to assume the defense. (*See* July 1 Tr. at 35:17–36:11).

The immediate withdrawal also would disrupt the ongoing discovery-compliance process and deprive the Court of counsel who possess extensive knowledge of the lengthy discovery history, the numerous prior productions, the remaining devices, and any outstanding technical issues. This inevitably would result

in significant additional delays in litigations that already have experienced extraordinary delays. This cannot and will not occur.

Accordingly, balancing counsel's legitimate reasons for seeking withdrawal against the substantial prejudice, disruption, and further delay that immediate withdrawal would cause, the Court concludes that withdrawal is not appropriate at this time. Defense counsel's Second Motions to Withdraw are therefore denied without prejudice.

## IV. Conclusion

Accordingly, IT IS on this 30th day of October, 2026;

**Ordered** that defense counsel's Second Motions to Be Relieved as Counsel (ECF No. 253 in 21-2716; ECF No. 263 in 21-3239) are denied without prejudice; and it is further

**Certified,** pursuant to 28 U.S.C. § 636(e)(6)(B), that the facts set forth above establish conduct warranting consideration of civil contempt; and it is further

**Ordered** that Defendant Township of Toms River shall appear before the Honorable Zahid N. Quraishi, U.S.D.J., on a date and at a time to be set by the District Court, to show cause why it should not be held in civil contempt and subjected to the coercive sanctions described herein; and it is further

**Ordered** that any objections to the certification and recommendation set forth herein shall be filed and served within fourteen (14) days of service of this decision.

**SO ORDERED.**

**/s/ Justin T. Quinn**
Justin T. Quinn, U.S.M.J.